IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DESHAWN REGAN,**<br><br>　　**Plaintiff,**<br><br>v.<br><br>**ANTHONY WILLS, JOSHUA SCHOENBECK, C/O LAUER, LIEUTENANT MCCARTHY, NURSE MORGAN, ANGELA CRAIN, NURSE REBA, C/O JANE AND JOHN DOES, C/O MORRIS, and WEXFORD HEALTHCARE,**<br><br>　　**Defendants.** | Case No. 23-cv-3886-NJR |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff DeShawn Regan, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pontiac Correctional Center, brings this action pursuant to 42 U.S.C. § 1983 for deprivations of his constitutional rights while incarcerated at Menard Correctional Center ("Menard"). In the Complaint, Regan alleges the defendants deprived him of his due process rights in a disciplinary hearing, subjected him to unconstitutional conditions of confinement, denied him proper medical and mental health care, and retaliated against him for filing lawsuits and lawsuits. He asserts claims pursuant to the First, Eighth, and Fourteenth Amendments.

This case is now before the Court for preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen

1

prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Complaint

In his Complaint, Regan makes the following allegations: On December 9, 2021, Regan and several inmates were pulled from the yard and escorted to the healthcare unit (Doc. 1, p. 6). Once arriving at the healthcare unit, Regan was confronted by Lieutenant Joshua Schoenbeck who stated that Regan would be placed in segregation. Schoenbeck allegedly threatened Regan, stating "you'll get to see what filing all that paperwork gets you." (*Id.*). Schoenbeck and the other officers then took pictures of Regan's hands and face, allegedly to determine if he was involved in an earlier altercation on the yard (*Id.* at pp. 6-7).

Regan was then escorted to North 2 restricted housing on temporary confinement (*Id.* at p. 7). He was placed in Cell #403. Regan alleges the cell was inhumane and in deplorable condition. The walls were covered in dirt, grime, mildew, and mold. The ventilation hole was coated in dust and the cell door was covered in plexiglass, preventing airflow into the cell (*Id.*). Regan complained about the conditions of his cell to numerous officers, counselors, lieutenants, and majors (*Id.*). He also wrote a letter to Warden Anthony Wills through the institutional mail (*Id.*).

On December 9, 2021, Correctional Officer ("C/O") Lauer interviewed Regan about the altercation on the yard (*Id.*). During the interview, Lauer threatened Regan and

instructed him to drop his lawsuit against the warden. If he agreed to drop his lawsuit, Lauer stated that he could make the current charges go away (*Id*.). If he refused, Lauer threatened to inform gang members at the prison that Regan was a snitch (*Id*.).

On December 12, 2021, Regan asked C/O Morris about accessing the telephones. C/O Morris threatened Regan, noting that other staff told him about Regan and how he filed lawsuits against staff (*Id*. at p. 8). He directed Regan to drop his lawsuits, threatening that he might not feed Regan if he did not drop the suits (*Id*.). C/O Morris then turned Regan's sink and toilet off, denying him access to water for 24 hours (*Id*.). Later that day, Morris handed Regan a "special" tray that contained only a small portion of potatoes. All of the other inmates around Regan received a chicken patty, bread, potatoes, vegetable, and dessert (*Id*.).

On December 14, 2021, C/O Lauer and Lieutenant McCarthy pulled Regan out of his cell for an interview (*Id*. at p. 14). They threatened him for using the grievance system and for filing lawsuits (*Id*.). They told him that all of the charges would go away if he dropped his lawsuits (*Id*.). They also threatened to make his stay "a living hell and as miserable as possible" until he agreed to drop his pending cases (*Id*.). McCarthy informed Regan that his cell was being torn apart during the interview (*Id*.). Regan sought help through the prison grievance process, but his grievances were ignored (*Id* at p. 14).

On an unstated date, Regan went before the adjustment committee for charges stemming from the yard incident on December 9, 2021 (*Id*. at p. 8). Lieutenant Schoenbeck served as chairperson of the committee. Regan submitted a written statement and a request for an extension of time (*Id*. at pp. 8-9). He also verbally requested an alternative

3

chairperson, arguing that Schoenbeck previously threatened him and had conflicts preventing him from acting as chairperson (*Id.* at p. 9). Schoenbeck refused the request and found Regan guilty. He punished Regan with three months in segregation (*Id.*).

During Regan's three months in segregation, he alleges that he was subjected to cruel and unusual conditions (*Id.* at p. 9). It was extremely cold outside, but Regan lacked adequate clothing and bedding to combat the cold temperatures in the cellhouse (*Id.* at pp. 9, 13). He was not able to clean his clothes because he lacked access to a laundry bag and was forced to wear dirty clothing (*Id.*). He never received adequate cleaning supplies to clean his cell (*Id.* at p. 10). The showers were not cleaned between usage by other inmates (*Id.*). Because it was during the Covid-19 pandemic, Regan alleges that inmates who refused Covid-19 shots were allowed to use the same showers as Regan (*Id.*). Regan alleges he developed symptoms, including shortness of breath, after using the showers (*Id.* at p. 11). He informed "several officers and staff" about the conditions in segregation (*Id.* at p. 10).

Regan also suffered from serious medical conditions while in segregation and attempted to obtain medical care (*Id.* at p. 11). On January 7, 2022, he tried to obtain care from Nurse Morgan, but his request was denied (*Id.*). He also wrote request slips to Counselor Quick about his need for medical care and the harassment from other officers (*Id.*). Quick responded that medical staff were notified of his request for care, but Regan still was not evaluated by staff (*Id.*). At some point during his stint in segregation, he developed symptoms of Covid-19 (*Id.* at p. 13). Although he asked for medical care, all requests for care were denied or ignored (*Id.*). Regan alleges that Angela Crain, who

4

allegedly oversaw the healthcare unit, was responsible for the medical staff's deliberate indifference to his need for testing and care for his condition (*Id*.). Regan eventually tested positive for Covid-19. During his stay in segregation, Regan also sought care from mental health staff for what he described as a mental health crisis (*Id*. at p. 12). He informed them of his need for emergency medical attention due to the stress of his conditions and staff harassment (*Id*.).

On January 15, 2022, Regan was taken out of his cell for a Covid-19 test (*Id*. at p. 11). While he was out of the cellhouse, multiple unknown officers entered his cell and destroyed his paperwork (*Id*.). An inmate in a nearby cell allegedly overheard the guards say that "this the legal man cell right here, he's the one always dropping grievances." (*Id*. at pp. 11-12). Officers entered his cell four more times during a 48-hour period (*Id*. at p. 12). Regan submitted a grievance about the searches of his cell. The intelligence officers acknowledged that Regan's cell had been entered multiple times, but the officers who were part of the search team were not identified (*Id*.). The grievance response also indicated that an inmate's cell could be searched and subject to a shakedown at any time (*Id*.). Although Regan was informed that he would receive a shakedown report, he never received one (*Id*.).

## **Preliminary Dismissals**

Regan identifies a number of generic John/Jane Does but fails to provide any identifying information or the number of officers he attempts to sue. For instance, Regan alleges that he informed "mental health staff" of his need for emergency medical care, but he fails to provide any allegations suggesting the number of mental health staff that

5

he spoke to or when he spoke to these individuals (Doc. 1, p. 12). Similarly, he alleges that "multiple officers" tore up his cell in retaliation for filing legal claims, but he fails to identify the potential number of officers involved in the search of his cell. He also alleges that he spoke to numerous officers and counselors about the conditions of his cell without providing any identifying information or a time period in which he spoke to these officials. Although Regan may certainly allege claims against identified John/Jane Does (*i.e.*, John Doe #1, John Doe #2), he includes generic groups of officials that cannot survive threshold review. Regan may identify a defendant by a John Doe designation, but he must identify them by number and description.

Regan also fails to state a claim regarding his medical and mental health care. In addition to alleging that various unknown medical staff ignored his requests for care, he alleges that on January 7, 2022, Nurse Morgan denied him medical attention (Doc. 1, p. 11). But he only states in conclusory fashion that she denied him needed medical attention. He fails to include any allegations to suggest that she was aware of his need for medical care or that he specifically asked for care from Nurse Morgan. *See Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999) (stating that the relevant inquiry is whether defendants "actually knew about [Plaintiff's] condition, not whether a reasonable official should have known").

It is also not clear whether Regan had a serious medical condition at the time. He alleges that at some point he contracted Covid-19, but as to his claim against Nurse Morgan, he merely alleges that he was suffering from medical issues (*Id.*). Further, on January 15, 2022, he received a Covid-19 test, suggesting that officials were attentive to

6

his medical needs. He also alleges that Angela Crain was responsible for medical staff's deliberate indifference because she oversaw care in the medical unit. But Crain cannot be liable for the actions of her subordinates because *respondeat superior*, or supervisor, liability does not apply to Section 1983 actions. *Shields v. Illinois Dep't of Corr.*, 746 F.3d 782, 789 (7th Cir. 2014). Similarly, Regan alleges that Wexford Healthcare is liable as the supervisors of Crain and the nurses. But Wexford also cannot be liable simply as supervisors. Regan can only proceed on a claim against Wexford if its policies and practices led to the deliberate indifference he experienced. *See Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004) (corporation can be held liable for deliberate indifference if it had a policy or practice that caused the violation). He fails to allege that he was denied care due to a policy or practice of Wexford. Finally, Regan identifies a Nurse Reba in the case caption but fails to include any allegations against her in his statement of claim. Thus, all potential claims against Nurse Morgan, Nurse Reba, Angela Crain, and Wexford Healthcare are **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts:

> **Count 1:** First Amendment retaliation claim against Schoenbeck, C/O Lauer, and McCarthy for issuing Regan a disciplinary ticket and ransacking his cell in retaliation for filing grievances and lawsuits.
>
> **Count 2:** First Amendment retaliation claim against C/O Morris for denying Regan adequate water and food in retaliation for filing grievances and lawsuits.

>  **Count 3:** Fourteenth Amendment due process claim against Schoenbeck for presiding over Regan's disciplinary ticket.
>
>  **Count 4:** Eighth Amendment conditions of confinement claim against Anthony Wills for housing Regan in unsanitary conditions in segregation.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

**Count 1**

Regan adequately states a claim in Count 1 for retaliation. Regan alleges that he was issued a disciplinary ticket and that Lieutenant Schoenbeck, C/O Lauer, and Lieutenant McCarthy all said that they could make the charges go away if he stopped filing lawsuits and grievances. Their statements suggest they issued the disciplinary ticket in retaliation for Regan's legal filings. They threatened him and also directed that his cell be torn up by guards. That is enough at this stage to state a retaliation claim.

**Count 2**

Regan also states a retaliation claim in Count 2. He alleges that C/O Morris turned off his water and provided him with inadequate amounts of food. Regan alleges that

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

8

Morris noted that Regan was the inmate filing lawsuits and threatened to deny him food and other necessities unless he dropped his cases. Morris then turned off Regan's water for 24 hours and brought him a meal with smaller portions. That is enough to state a claim at this stage.

**Count 3**

As to Regan's procedural due process claim in Count 3, the Court undertakes a two-part analysis. *Isby v. Brown*, 856 F.3d 508, 524 (7th Cir. 2017). The Court first evaluates whether the prisoner was deprived of a protected liberty interest, and then second, evaluates whether the process he was afforded was constitutionally deficient. *Id.* (citing *Hess v. Bd. of Trs. of S. Ill. Univ.*, 839 F.3d 668, 673 (7th Cir. 2016)). Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). In addition, the decision of the adjustment committee must be supported by "some evidence." *Scruggs v. Jordan*, 485 F.3d 934, 941 (7th Cir. 2007).

Here Regan alleges that he was subjected to unconstitutional conditions of confinement while housed in segregation on his disciplinary ticket. He faced unsanitary conditions in his cell and unsanitary conditions and exposure to Covid-19 in the showers. He also alleges that Schoenbeck, as adjustment committee chairman, was not an impartial

9

hearing officer because he had previously threatened Regan. Thus, Regan adequately states a claim against Schoenbeck in Count 3.

**Count 4**

Finally, Regan states a claim in Count 4 for the conditions of confinement he experienced in segregation. He alleges that he wrote a letter to Warden Anthony Wills about the conditions. Although he also alleges that he spoke with numerous correctional officers about the conditions, he fails to identify those officials by name or John Doe designation. Thus, Count 4 shall only proceed against Warden Wills.

## Disposition

For the reasons stated above, Count 1 shall proceed against Joshua Schoenbeck, C/O Lauer, and Lieutenant McCarthy. Count 2 shall proceed against C/O Morris. Count 3 shall proceed against Schoenbeck and Count 4 shall proceed against Anthony Wills. All other claims against Nurse Morgan, Nurse Reba, Angela Crain, unknown John/Jane Does, and Wexford Healthcare are **DISMISSED without prejudice**

The Clerk of Court shall prepare for Defendants Joshua Schoenbeck, C/O Lauer, Lieutenant McCarthy, C/O Morris, and Anthony Wills: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Regan. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require

10

that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Regan, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

If judgment is rendered against Regan, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Regan is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

IT IS SO ORDERED.

DATED: March 14, 2024

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**